IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

and                                       Case No. 6:02-cv-1112-Orl-28DAB

TED MAINES,

                Plaintiff-Intervenor

      v.

FEDERAL EXPRESS CORPORATION,

                Defendant.

_____/

## PLAINTIFFS' TRIAL BRIEF

This is an action filed by the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. The action was filed against Defendant, Federal Express Corporation ("FedEx") in order to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Ted Maines who was adversely affected by such practices.

In addition to the Title VII retaliation claim, Mr. Maines' intervened in this action on October 30, 2002, seeking remedies under the Florida Civil Rights Act of 1992 (Fla. Stat.§ 760.01) and Florida's Private Sector Whistleblower Act (Fla. Stat. §§ 448.101 et seq.).

## I.    FACTUAL BACKGROUND

Mr. Maines began what would be an exemplary twenty-one-year career at FedEx in November



of 1979. He worked his way up from Customer Service to Senior Manager of FedEx's Customer Account Services. During his twenty-one year career, Maines received salary increases for exceptional performance, as well as numerous commendations and awards including awards symbolizing he rated in the top one percent of salaried employees in his division.

Mr. Maines' employment record and performance went unblemished until on or about February 7, 2001, when he complained to Defendant's Senior In-house Counsel, Gregg Richards, about what he reasonably believed to be discriminatory employment practices on the part of FedEx's Vice President of Worldwide Revenue Operations, Diane Mattman. Specifically, Mr. Maines told In-house Counsel Richards that he reasonably believed that Vice President Mattman was discriminating against two minority candidates who had been selected to fill two manager positions. Immediately after Maines' complaint to Defendant's legal department, retaliatory conduct toward him ensued.

On or about February 16, 2001, barely nine (9) days after Mr. Maines' complaint, FedEx gave Mr. Maines the ultimatum to either (i) accept a demotion of five pay grade levels and report to his subordinate (resulting in loss income of approximately $50,000); or (ii) be issued a strongly worded warning letter and face immediate termination for *any* subsequent "mistake." When Maines advised Defendant that he could not reasonably accept either of these two (2) intolerable and unreasonable options, FedEx immediately issued a disciplinary warning letter containing a threat of termination. Immediately following the issuance of the warning letter, Defendant's escalation of its retaliatory conduct worsened. As a result of Defendant's continued retaliatory conduct, coupled with the unmistakable threat that his employment would be terminated upon any "next mistake," the terms and conditions of Mr. Maines' employment with the Defendant became so intolerable that he was forced

2

to resign his position of Senior Manager on April 9, 2001.

## II.   PLAINTIFFS WILL PROVE THAT DEFENDANT RETALIATED AGAINST MR. MAINES

### A.   <u>Plaintiffs Can Establish A Prima Facie Case of Retaliation</u>

In the Eleventh Circuit, a prima facie case of retaliation can be established by showing that: (1) the employee engaged or is engaging in a statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. <u>Hairston v. Gainesville Sun Publishing Co.</u>, 9 F.3d 913 (11th Cir. 1993).

### 1.   Mr. Maines engaged in statutorily protected activity

At trial Plaintiffs will establish that Mr. Maines engaged in a statutorily protected activity, and will show that Maines had a good faith, reasonable belief, both objectively and subjectively, that the conduct about which he complained constituted unlawful discrimination. The Eleventh Circuit has recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief, both objectively and subjectively, that the employer was engaged in unlawful employment practices. <u>Little v. United Technologies</u>, 103 F.3d 956, 960 (11th Cir. 1997), <u>citing, Rollins v. State of Fla. Dept. of Law Enforcement</u>, 868 F.2d 397, 400 (11th Cir. 1989).

The Plaintiffs will show that on February 7, 2001, Mr. Maines made a complaint via telephone to FedEx's legal department, wherein he objected to what he believed to be discriminatory employment practices on the part of Vice President Mattman. In his complaint of discrimination against Vice President Mattman, Mr. Maines clearly indicated that he believed that both Ms. Reece

3

and Ms. Miller (minority applicants) were being discriminated against in favor of a Caucasian applicant, Lauren Ruston, for available CAS Manager positions.

Notably, the Plaintiffs will show that at the time Mr. Maines and Manager Joni Smith, the other interviewing panel member, conducted the CAS Manager selection process, Mr. Maines absolutely and unequivocally believed that both Ms. Reece and Ms. Miller met the minimum specifications for the position. To this end, Ms. Miller's application clearly indicated that she had the required experience equivalents that exceeded the minimum qualifications for the CAS manager position. More importantly, Plaintiffs will show that Mr. Maines was not the only person who held a sincere and reasonable belief that both the candidates were qualified, but so did Senior Personnel Representative Jenkins, who approved and certified the selection of the two minority candidates as mandated by FedEx's policy.[1]

In further support of the fact that Mr. Maines' belief was objectively reasonable under the circumstances, Plaintiffs will establish that at least three (3) times prior to Mr. Maines' complaint of discrimination to the legal department about VP Mattman, that Mr. Maines had personally observed VP Mattman engage in conduct which he and other managers perceived as being discriminatory toward  racial minorities. to the commencement of the interview process, Mr. Maines received telephone calls from his Managing Director, Karen Christian, who stated "with escalating urgency" that he should "strongly" consider Lauren Ruston because VP Mattman and Betty Hale (another Caucasian FedEx executive) wanted Ms. Ruston to be selected as a CAS Manager.

---

[1] Consistent with the "Management Selection/ASPIRE" hiring policy, which states, in pertinent part, that "Personnel must audit the qualifications of selected candidates before the job offer is made."

Accordingly, Plaintiffs will show that Mr. Maines' opposition to what he believed were discriminatory employment practices were, both, subjectively and objectively reasonable with respect to the facts present in this case.

### 2.   Mr. Maines suffered an adverse employment action

At trial Plaintiffs will also establish that Mr. Maines suffered an adverse employment action. Eleventh Circuit precedent establishes that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions such as discharge. See Wideman v. Wal-Mart Stores, Inc, 141 F.3d 1453, 1455 (11th Cir. 1998).   In Wideman, the Court ruled that: "Permitting employers to discriminate against employees who [complain of] discrimination so long as the retaliatory conduct does not constitute an ultimate employment action could stifle employees' willingness to [complain or] file charges of discrimination. Id. at 1456.

Here, the adverse actions that befell Mr. Maines immediately after his complaint of discrimination more than satisfy the "threshold level of substantiality" to be cognizable under Title VII's anti-retaliation clause. [2] Id.

Barely nine (9) days after Mr. Maines' complaint of discrimination against VP Mattman, Mr. Maines received a telephone call from his newly installed Director, Lex Lannom.   During this

---

[2]In connection with *Wideman's* holding in this regard, the Florida Whistleblower Act states that: " 'Retaliatory personnel action' is defined as the "discharge, suspension, or demotion by an employer of an employee *or any other* adverse employment action taken by an employer against an employee in the terms and conditions of employment." §448.101(5), Fla. Stat. (emphasis added).   Moreover, it is settled law in Florida that this remedial statute must be liberally construed in favor of granting access to the remedy provided by the Legislature. See also, The Golf Channel v. Jenkins, 752 So. 2d 561, 566 (Fla. 2000); Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 424 (Fla. 1994).   Accordingly, Mr. Maines respectfully argues that *Wideman's* holding *must also* be applied for purposes the Whistleblower retaliation claim in accordance with Sierminski v. Transouth Fin. Corp., 216, F.3d 945, 950 (11th Cir. 2000).

telephone call, Mr. Lannom's tone reflected enjoyment in issuing Mr. Maines the punitive and intolerable ultimatum of: (1) either accepting a 5-level demotion out of management and report to his subordinate, Joni Smith; or (2) if Mr. Maines refused to accept this demotion, he would receive a "strongly worded warning letter" and Vice President Mattman wanted him to know that the next mistake Mr. Maines made, he would be terminated.

Plaintiffs will further show that on February 21, 2001, Mr. Lannom issued Mr. Maines a "Warning Letter," after Mr. Maines respectfully refused to accept either of the two (2) intolerable and blatantly retaliatory options.   Disturbingly, this "Warning Letter" in no way represented any type of legitimate discipline issued against Mr. Maines by FedEx.  To the contrary, it represented the first step invariably leading to the second intolerable and retaliatory option presented to Mr. Maines during that phone call; namely his imminent termination.

After Mr. Maines refused to accept Defendant's retaliatory ultimatum, Plaintiffs will present testimony from Mr. Maines and other witnesses showing that the writing was on the wall – Defendant wanted Mr. Maines gone. Plaintiffs will also present the testimony of witnesses that substantiate Defendant increased it scrutiny of Mr. Maines and departments under his supervision  immediately after Mr. Maines made his complaint of discrimination against VP Mattman.

Further, after Mr. Maines received the "Warning Letter" from Mr. Lannom, Mr. Maines contacted Attorney Richards, and reported a complaint of retaliation against Mr. Lannom and VP Mattman. Attorney Richards simply advised Mr. Maines to file a "Guarantee of Fair Treatment Procedure" complaint ("GFTP"), and "interpreted [Maines'] statement as a belief on his part that he had been subject to retaliation."  The evidence will show that Mr. Maines attempted to avail himself

6

of the GFTP process, but disturbingly, Mr. Maines' GFTP complaint was routed to VP Mattman, the very official of whom he was complaining. In this respect, Plaintiffs strongly assert that this evidence is sufficient for a jury to infer that the evidence represents a continued act of retaliation on the part of the Defendant. On April 9, 2001, Mr. Maines was constructively discharged.

The Eleventh Circuit holds that constructive discharge, like actual discharge, is a material adverse employment action under Title VII. Maddow v. Proctor & Gamble, 107 F.3d 846 (11th Cir. 1997); Poole v. The Country Club of Columbus, Inc., 129 F.3d 551 (11th Cir. 1997). In Pa. State Police v. Suders, 542 U.S. _____, (2004), Justice Ginsberg delineated the required showing to establish constructive discharge writing that: "[W]e hold, to establish 'constructive discharge,' the plaintiff must show that the abusive working environment because so intolerable that her resignation qualified as a fitting response." The Court went on to say that such an intolerable working environment could include, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which he would face unbearable working conditions. Id.

The evidence the Plaintiffs intend to present in the case at bar is sufficient for a jury to find that the working conditions alleged were sufficiently intolerable that an objectively reasonable person in Mr. Maines' shoes would find resignation a fitting response to Defendant's retaliatory conduct.

In Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000), the Court held that whether or not an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case by case basis, using both a subjective and an objective

standard.  (11th Cir. 2000).[3]   Based upon the facts of this case, Mr. Maines' satisfies both the objective and subjective standard of this element.

Moreover,  Plaintiffs will also demonstrate to the jury that Mr. Maines' termination  was imminent after his complaint of discrimination to Defendant's legal department.  As stated above, Mr. Maines was given the retaliatory ultimatum of either accepting  a 5-level demotion; or if he refused to accept this demotion, he would receive a "strongly worded warning letter" and VP Mattman wanted him to know that the next mistake he made, he would be terminated.

In EEOC v. University of Chicago Hospitals, 276 F.3d 326 (7th Cir. 2002), the Court specifically recognized that: "We are ordinarily faced with a situation in which an employee *only* alleges that she resigned because of discriminatory harassment, and in such cases, we require a plaintiff to demonstrate a discriminatory work environment 'even more egregious than the high standard for hostile work environment.'" *Id.,* at  331, 332 (citing Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000), *cert. denied*, 531 U.S. 1078 (2001)). (emphasis added).  Importantly, in terms of the instant case, the court in University of Chicago Hospitals also ruled that: "But that is not the only method of demonstrating constructive discharge.  When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.,* at 332. (emphasis added).  This is commonly referred to as the "imminent-discharge analysis" for establishing constructive discharge, and it extends Title VII protection to a plaintiff who decides to quit rather than

---

[3]Citing Doe v. Dekalb County School Dist., 145 F.3d 1441,1448-49 (11th Cir. 1998)(recognizing that the subjective requirement is virtually almost always satisfied and imposing an objective requirement, as well).

8

simply waiting around to be fired. Id.[4]

Accordingly, Plaintiffs maintain that the evidence before the Court sufficiently establishes that Maines' work environment became objectively and subjectively intolerable such that a reasonable person in Mr. Maines' circumstances would have been compelled to resign.

### 3.        Plaintiffs will Prove A Causal Link

To establish a causal link "a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1157 (11th Cir. 1993).  The causal link requirement is broadly construed so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  Evidence of awareness combined with proximity in time between the protected activity and the adverse action are proof of a causal link. Goldsmith, 996 F.2d at 1163-1164; Sowers v. Kemira, Inc., 701 F. Supp. at 825.  The Eleventh Circuit further explained that "[for] purposes of a prima facie case, 'close temporal proximity,' may be sufficient to show that the protected activity and the adverse action where not 'wholly unrelated.'" Gupta, 212 F.3d at 590; Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453,1457 (11th Cir. 1998).[5] Here Plaintiffs will readily establish the requisite knowledge and immediate temporal proximity to prove the nexus between Mr. Maines' protected

---

[4]  See also, Lopez v. S.B. Thomas, Inc., 831 F.2d 1184 (2nd Cir. 1987); Welch v. University of Texas, 659 F.2d 531 (5th Cir. Unit A, October 15, 1981).

[5]Citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986)("The short period of time [one month] between the filing of discrimination complaint and the ... [adverse employment action] belies any assertion by the defendant that plaintiff failed to prove causation."

activity and  the onslaught of adverse employment actions against him including discipline and constructive discharge.

Plaintiffs will show that both VP Mattman and Mr. Lannom (the decision makers with respect to Mr. Maines' discipline and the events precipitating his constructive discharge) had knowledge of Mr. Maines' discrimination complaint to Defendant's legal department.

This awareness on the part of the decision makers  combined with the immediate temporal proximity of the onset of the adverse employment actions alleged herein (e.g., only nine days after his complaint to the legal department, Maines was given the intolerable ultimatum from Mr. Lannom) are more than sufficient to establish the causal nexus for purposes of Plaintiffs' prima facie case.

**B.**     **Plaintiff will establish Pretext.**

A Plaintiff can either prove pretext directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824-25 (1973); St. Mary's Honor Center, et al. v. Hicks, 113 S.Ct. 2742, 2749 (1993) (Court stated that rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination; no additional proof of discrimination is required). See also Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097, 2109 (2000)(a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated).

Conclusively, Plaintiffs will show that the Warning Letter issued to Mr. Maines was retaliatory and manufactured to bring about his termination.  In fact, Plaintiffs will present evidence and

testimony demonstrating numerous inconsistencies and false statements in the alleged "Warning Letter."

To further establish pretext, Plaintiffs will illustrate the contradictory testimony of Mr. Lannom and VP Mattman regarding their involvement in the issuance of the Warning Letter to Mr. Maines.

Additionally, Plaintiffs will present the testimony of Managing Director Christian that literally *the day after* Mr. Maines made his discrimination complaint to Attorney Richards, VP Mattman angrily cited this "call from the Legal Department" as the basis and justification for summarily removing her from the position of Mr. Maines' Managing Director.

Accordingly, Plaintiffs respectfully submit its evidence of pretext regarding the "Warning Letter," will conclusively establish that FedEx's proffered reasons for its disciplinary actions, and constructive discharge are pretextual.

## III.   PLAINTIFFS WILL ESTABLISH ENTITLEMENT TO ALL DAMAGES

### A.   Mr. Maines is Entitled to Back Pay

Once a finding of unlawful termination is found, the victim of the discriminatory termination is entitled to full back pay.  The purpose of a back pay award is to put the employee in the same financial position he would have been in but for the discrimination, i.e., to make whole or compensate the employee for lost salary and benefits.  See, e.g., U.S. EEOC v. Massey Yardley Chrysler Plymouth Inc., 117 F.3d 1244, 1251 (11th Cir. 1997)(ADEA).

This Circuit has held that "[v]ictorious Title VII plaintiffs are presumptively entitled to back pay."  Nord v. U.S. Steel Corp., 758 F.2d 1462, 1472 (11th Cir. 1985).

Plaintiffs are seeking backpay on behalf of Mr. Maines equaling the difference between the

11

value of wages (plus any other compensation, bonuses and other related benefits) Mr. Maines would have earned, but for his constructive discharge, less amounts earned afterwards by way of mitigation, plus interest. Back pay runs from the date of the adverse employment action until the present or until such time as a person removes herself from the labor market. See Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1446 (11th Cir. 1985) (awarding back pay), rehearing denied, 765 F.2d 154 (11th Cir. 1985), cert. denied, 474 U.S. 1005 (1985).

"Earnings in one particular quarter shall have no effect upon the back-pay liability for any other quarter." Darnell v. City of Jasper, Alabama, 730 F.2d 653, 656-57 (11th Cir. 1984), citing, NLRB v. Seven Up Bottling Co., 344 U.S. 344, 345, 78 S. Ct. 287, 288, 97 L.Ed. 377 (1953), which quoted, F.W. Woolworth Co., 90 N.L.R.B. 289, 292-93 (1950). Prejudgment interest on the back pay amount is assessed at the IRS prime rate, compounded quarterly for the period of back pay liability. EEOC v. Guardian Pools, Inc., 828 F.2d 1507 (11th Cir. 1987).

**B.**       **Mr. Maines Is Entitled To Compensatory Damages**

The Civil Rights Act of 1991 provides for an award of compensatory damages, including non-pecuniary compensatory damages. 42 U.S.C. §1981(a).[6]

Here, Mr. Maines is entitled to non-pecuniary compensatory damages for the emotional harm he suffered as a result of Defendant's unlawful discrimination. An award for emotional harm is warranted where there is a sufficient causal connection between the respondent's illegal actions and the complaining party's injury. See Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977). Evidence of

---

[6] Under section 760 of FCRA, compensatory damages are not capped. Similarly, Florida's Private Sector Whistle Blower Act contains no statutory caps on compensatory damages for emotional distress.

emotional harm may be established by testimony. Gunby v. Pennsylvania Electric Company, 840 F.2d 1108, 1121-22 (3rd Cir. 1988), cert. denied, 492 U.S. 905 (1989); and Cowan v. Prudential Insurance Co., 852 F.2d 688, 690-91 (2nd Cir. 1988).  The "plaintiff's own testimony may be solely sufficient to establish humiliation or mental distress."  Williams v. Transworld Airlines, Inc., 660 F.2d 1267, 1273 (8th Cir. 1981).

In the case at bar, Plaintiffs will present the testimony of Mr. Maines who will testify to the emotional damages he suffered was a result of Defendant's unlawful conduct, which include humiliation, severe emotional distress, embarrassment, intimidation and inconvenience.  Plaintiffs will also introduce the testimony of other individuals who witnessed and observed Mr. Maines' emotional state, before, during, and after Defendant's retaliatory conduct.

## C.    **Plaintiffs are Entitled to Punitive Damages**

The Civil Rights Act of 1991 also allows for an award of punitive damages where "the complaining party demonstrates that a respondent engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. 1981 (a).

The Eleventh Circuit has defined recklessness, for 1981a purposes, as "'with serious disregard for the consequences of [one's] actions'" and malice as "an intent to harm.'" Reynolds v. CSX Transp., Inc., 115 F.3d 860, 869 (11th Cir. 1997), *citing*, Splunge v. Shoney's, Inc., 97 F.3d 488, 491 (11th Cir. 1996); See also, Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987) (oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the civil rights of the plaintiff").

The elements to consider when asserting a punitive damages claim include:

13

a) the degree, nature and egregiousness of the Defendant's conduct; b) the nature, extent, and severity of the harm to the claimant; c) the duration of the alleged discriminatory conduct; d) the existence and frequency of past discriminatory conduct; e) the actions of the defendant after being informed of the discriminatory conduct; f) evidence of a concealment or "coverup" by defendant; and/or g) proof of threats or deliberate retaliatory conduct of defendant.

EEOC Policy Guidance on Damages Provisions of 1991 Civil Rights Act and Disparate Treatment Cases Approved by Commissioners, July 7, 1992.

Plaintiffs will show that an evaluation of the facts of this case based on these factors clearly demonstrate that Mr. Maines is entitled to punitive damages. The evidence will demonstrate, *inter alia*, that Defendant's upper level management engaged in an intentional concerted effort to retaliate against Mr. Maines for exercising his federally protected rights, and then took extensive steps to "cover up" their retaliatory acts by masking them as "legitimate discipline." Moreover, Plaintiffs will submit considerable evidence of the malicious acts of harassment and intimidation engaged in by these upper management officials including electronic monitoring, restricting Mr. Maines' ability to communicate with subordinates and threatening him with the imminent termination of his twenty-one (21) year career.

## VI. PLAINTIFF IS ENTITLED TO AFFIRMATIVE RELIEF.

"The EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly-situated employees by deterring the employer from future discrimination." U.S. EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1253 (11th Cir. 1997)(citation omitted) (District Court's failure to award injunctive relief in an ADEA case was held to be an abuse of discretion). Unless there is "clear and

14

convincing proof of no reasonable probability of further noncompliance with the law[,] a grant of injunctive relief is mandatory." James v. Stockham Valves & Fittings Co., 559 F.2d 310, 354 (5th Cir. 1977), cert. denied, 434 U.S. 1034 (1978), citing, EEOC v. Rogers Bros., 470 F.2d 965 (5th Cir. 1972). This Court should enjoin the Defendant from engaging in unlawful retaliation against its employees for engaging in statutorily protected activities. Additionally, upon a finding of liability, EEOC will request that this Court require Defendant to implement and distribute an anti-retaliation policy and to post a Notice in a conspicuous location in its facilities advising employees of their rights under Title VII and affirmatively asserting Defendant's commitment to observing those rights. Moreover, EEOC will also seek the submission of periodic monitoring reports to the EEOC to ensure that complaints of discrimination and/or retaliation are addressed appropriately.

Respectfully submitted, 7/1/04

ERIC DREIBAND
General Counsel

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DELNER FRANKLIN THOMAS
Regional Attorney
Signed by Mr. Wedmore with Permission
from Mr. Gillespie

KENNETH L. GILLESPIE
Senior Trial Attorney
Florida Bar No. 0083054
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

ANDREW G. WEDMORE
Florida Bar No.: 0141143
Jill S. Schwartz, Esquire
Florida Bar No.: 523021
JILL S. SCHWARTZ & ASSOCIATES, P.A.

15

Miami District Office
One Biscayne Tower, Suite 2700
Two South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 530-6006
Facsimile: (305) 536-4494

180 North Park Avenue, Suite 200
Winter Park, Florida 32789-7401
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
Attorney for Plaintiff-Intervenor

## CERTIFICATE OF SERVICE

PLAINTIFFS HEREBY CERTIFY that a true and correct copy of **PLAINTIFFS' TRIAL BRIEF**

was furnished by United States Mail, this 1ˢᵗ day of July, 2004, to:

Carl K. Morrison, Esq.
Federal Express Corporation
3629 Hacks Cross Road
3ʳᵈ Floor - Building B
Memphis, Tennessee 38125

Kay Wolf, Esq.
Daniel P. O'Gorman, Esq.
Attorneys for Defendant
Ford & Harrison, LLP
300 South Orange Avenue, Suite 1300
Orlando, Fl 32801

Andrew Wedmore, Esquire

16