# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

TED MAINES,

Intervenor-Plaintiff,

-vs-                                        Case No.  6:02-cv-1112-Orl-28DAB

FEDERAL EXPRESS CORPORATION,

Defendant.

---

# ORDER

This cause is before the Court on Plaintiffs' Joint Post-Trial Motion Regarding Front Pay and Injunctive Relief (Doc. 140), in response to which Defendant Federal Express Corporation ("FedEx") has filed a Memorandum in Opposition (Doc. 142). The Court heard argument and testimony regarding the motion on April 14, 2005.

## I. Background

This employment discrimination case was tried to a jury in December 2004. The jury returned a verdict finding that Plaintiff Ted Maines had engaged in statutorily protected activity by opposing an employment practice and that FedEx retaliated against him for engaging in that activity by, inter alia, constructively discharging him. (Verdict, Doc. 116). The jury determined damages in the amounts of $201,010.30 for lost wages and benefits

and  $1.37 million for emotional pain and mental anguish. (Id.).  The jury did not award any punitive damages, however, because it found that although "a higher management official of [FedEx] acted with malice or reckless indifference," FedEx "acted in a good faith attempt to comply with the law by adopting policies and procedures to prohibit such discrimination in the workplace." (Punitive Damages Verdict, Doc. 121).

After the verdicts, FedEx renewed its motion for judgment as a matter of law and alternatively moved for a new trial or amendment of judgment.  (Doc. 126).  The Court denied the motion except to the extent that it sought remittitur of the compensatory damages amount for emotional pain and mental anguish.  (Order, Doc. 133).  The compensatory damages award was remitted from $1.37 million to $350,000; Plaintiffs were given the option of accepting the remitted amount or proceeding to a new trial on damages. (Id.). Plaintiffs then moved for (Doc. 134), and were granted (Doc. 135), an extension of time within which to make their remittitur decision until after the front pay issue was decided.  That issue is now before the Court, along with the issue of injunctive relief.

## II. Discussion

Title VII includes the following provision:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).  Plaintiffs seek front pay and injunctive relief pursuant to this

section.

### A.  Front Pay

"In addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1528 (11th Cir. 1991).  Reinstatement is presumed to be "the appropriate remedy in a wrongful discharge case," but "'when extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement.'" EEOC v. W & O, Inc., 213 F.3d 600, 619 (11th Cir. 2000) (quoting Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1338-39 (11th Cir. 1999)).  If a district court awards front pay in lieu of reinstatement, it must "'carefully articulate' its reasons for" doing so. Id. (quoting Farley, 197 F.3d at 1339).

Plaintiffs contend that reinstatement is not feasible in this case because of animosity between the parties, and in their motion Plaintiffs state, "Counsel for Defendant and counsel for Plaintiff are in agreement that reinstatement is not appropriate as it would not constitute a fit within FedEx's current management structure." (Doc. 140 at 9 n.1).  During argument on the motion, counsel for FedEx agreed that the parties had, early in the case, stipulated that front pay in lieu of reinstatement would be submitted to the court; however, counsel added that after the trial, discussions on the issue of reinstatement had been reopened between the parties.  FedEx informed Mr. Maines that it had no available jobs to offer him in the Orlando metropolitan area, and Mr. Maines indicated that he was not willing to relocate.  Hence, FedEx did not look into whether it had a job for him at any other location. In sum, although FedEx does not agree that reinstatement is impossible due to animosity,

FedEx does not dispute that reinstatement is not really a viable option in this case, and the Court agrees. However, FedEx argues that Mr. Maines has already been made whole by the jury's remitted damages awards, that he has failed to mitigate his damages by seeking comparable employment, and that front pay is not warranted here.

At the time of his separation from employment from FedEx in early 2001, Mr. Maines was making an annual salary of slightly less than $100,000,[1] but Plaintiffs base their front pay claim on total annual compensation, including benefits, of $135,134. (See Pls.' Ex. 13 at 8). This $135,134 total consists of: 2004 annual base pay of $100,477; incentive pay of $16,076; retirement plan contributions of $14,067; and insurance replacement costs of $4,504. (Pls.' Ex. 13 at 8). However, the expert who prepared the front pay calculation conceded at the hearing that as to the incentive pay of just over $16,000, she assumed that Mr. Maines would earn that incentive pay year after year, even though she only had data reflecting that Maines earned that much of a bonus in 2000 and not in any other year.

Before his constructive discharge, Mr. Maines had secured a new job as a medical office administrator, earning $85,000 (a salary of $75,000 plus a $10,000 bonus), but with no benefits. However, when that office did not grow as anticipated, that job was phased out and Mr. Maines took his current job, working as an independent contractor for a real estate developer earning $60,000 with no benefits. Based on the difference between this $60,000 salary and the $135,000 in total compensation that he would ostensibly be making at FedEx,

---

[1] Plaintiffs' exhibit regarding Mr. Maines's salary history at FedEx lists his 2000 salary as $94,879 but also states that his "ending salary was $7,233.00 per month base pay plus bonuses and fringe benefits." (Pls.' Ex. 13 at 3). Annualized, his final salary was $86,796 ($7,233 per month X 12 months).

-4-

Mr. Maines seeks front pay in the amount of approximately $75,000 per year.  Although he is not expected to retire for eighteen years, he is requesting ten years of front pay, for a total front pay award of $785,963.

However, Plaintiffs paint an unduly bleak picture of the situation in which Mr. Maines found himself upon separation from his employment at FedEx.  Although they characterize him as a nearly fifty-year-old worker (Mr. Maines testified that he will turn forty-seven next month) with only a high school degree and "FedEx-specific" job skills, another – and, in the Court's view, more accurate – way to assess his situation is as an articulate, successful manager with many marketable skills who was only forty-two years old at the time of his discharge more than four years ago.  Mr. Maines was hired by FedEx in 1979 and had become a manager within three years and a senior manager only two more years after that.  Mr. Maines testified that in the four years since his termination, he has submitted forty resumes, which works out to ten per year.  He had applied for two jobs in March 2005 but none in April 2005, and he has spoken to, but not hired, a headhunter.

Considering the testimony and the arguments of counsel, the Court declines to award Mr. Maines any front pay.  He has already been awarded back pay from the date of his termination to the date of trial – a nearly four-year period.  Although Mr. Maines testified that he would like to obtain a comparable position to that that he held at FedEx and that he has made a modest effort to find one, he has had four years to work his way back up.  As the Weaver court stated:

> Back pay and front pay are not independent and severable items of damages.  They are each part of the remedy the court is charged with fashioning, a remedy that, as a whole,

> achieves the remedial purposes of the Act.  A monetary award
> of front pay is calculated to terminate on the date a victim of a
> discrimination attains an opportunity to move to his "rightful
> place."  Front pay, therefore, is appropriate only when the other
> damages awarded will not fully compensate the plaintiff for his
> injury.

922 F.2d at 1529 (footnotes omitted).

Essentially, back pay and front pay are two sides of the same coin – compensation for lost earnings – divided temporally by the date of trial/judgment.  Mr. Maines has already been awarded more than $200,000 in compensation for nearly four years of a salary differential.[2]  In light of the fact that Mr. Maines obtained a management position at FedEx within three years of hire and a senior management position within five years, and now has approximately twenty years of management experience, the nearly four years for which Mr. Maines has already been compensated is a sufficient length of time for Mr. Maines to have "attain[ed] an opportunity to move to his 'rightful place.'"  Id.  In sum, the Court rejects Plaintiffs' assessment of Mr. Maines's job prospects and limited skill set, and finds that he should have been able to work his way back to comparable employment by now and has been made whole by the damages he has already been awarded.  Thus, an award of front pay is not appropriate in this case.

### B.  Injunctive Relief

Plaintiffs also seek the imposition of injunctive relief, including:  (1) a permanent injunction barring FedEx from engaging in retaliatory employment practices; (2) a

---

[2]In addition, of course, Mr. Maines has been awarded $350,000 for pain and suffering, for a total of well over $500,000 in damages.

requirement that Fed Ex redistribute its anti-discrimination policy to all of its Maitland, Florida employees and to all management officials with supervisory authority over those employees; (3) a requirement that FedEx implement a half-day training session (for its Maitland employees and management officials) annually for five years regarding Title VII's proscription against retaliation and FedEx's anti-retaliation policy; (4) a requirement that a notice regarding disposition of this lawsuit, signed by the CEO of FedEx, be conspicuously displayed at the Maitland facility for a minimum of five years; and (5) a requirement that FedEx file quarterly reports with the EEOC's District Office in Miami regarding the receipt of discrimination complaints by any employee at the Maitland facility. (See Doc. 140 at 16-18).

As noted by Plaintiffs in their memorandum, in EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1253 (11th Cir. 1997), the Eleventh Circuit cited with approval the Seventh Circuit's standard "that the EEOC is normally entitled to injunctive relief where it proves discrimination against one employee and the employer fails to prove that the violation is not likely to recur." In the instant case, however, FedEx has persuaded the Court that the violation is not likely to recur, and only very limited injunctive relief is warranted in this case. By all accounts, the retaliation against Mr. Maines was an isolated incident by a single manager who is no longer employed by FedEx. A FedEx employee testified at the hearing that in the four years since Mr. Maines's constructive discharge, there have been no complaints of discrimination made at the Maitland office, and no evidence of any complaints at any other FedEx office was presented.

Accordingly, the Court will grant in part the second of FedEx's five requested forms of injunctive relief and will order FedEx to redistribute its anti-discrimination policy to all of

its management officials with supervisory authority over FedEx's Maitland, Florida employees.  Beyond this measure, however, no need for injunctive relief is apparent.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Plaintiffs' Joint Post-Trial Motion Regarding Front Pay and Injunctive Relief (Doc. 140) is **GRANTED in part** and **DENIED in part.**  The motion is **GRANTED** only to the extent that it seeks injunctive relief in the form of redistribution of FedEx's anti-discrimination policy as ordered in paragraph two below.  In all other respects, the motion is **DENIED**.

2.  Within thirty days of the date of this Order, FedEx shall redistribute its anti-discrimination policy to all management officials with supervisory authority over its Maitland, Florida employees.

3.  As stated in this Court's prior Order (Doc. 135), Plaintiffs shall file a notice within ten days of this Order regarding their decision as to remittitur.  If the Plaintiffs do not file a notice of acceptance of remittitur, a new trial limited to the issue of damages for emotional pain and mental anguish will be ordered.  (See Order, Doc. 133, at 8).

**DONE** and **ORDERED** in Orlando, Florida this ___5___ day of May, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

-8-